## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **YOLANDA GRAVES** | : | |
| 6203 Gothic Lane | : | |
| Bowie, MD 20720 | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| **ADVENTIST HEALTHCARE, INC.** | : | |
| **dba Adventist Home Health** | : | |
| 820 W. Diamond Avenue, Suite 600 | : | |
| Gaithersburg, MD 20878 | : | |
| **SERVE**: | : | |
| Kenneth B. Destefano, Esq. | : | |
| 820 W. Diamond Avenue, Suite 600 | : | |
| Gaithersburg, MD 20878 | : | |
| | : | |
| Defendant | : | |

## COMPLAINT WITH JURY DEMAND

Plaintiff Yolanda Graves ("Graves"), by and through her undersigned counsel, Mark G. Chalpin, Esq., respectfully sues Defendant Adventist Healthcare, Inc., dba Adventist Home Health ("Adventist") for race discrimination and retaliation under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., as follows:

## PARTIES

1.      Graves is an individual residing in Maryland.

2.      Adventist is a company in the health care business incorporated in the State of Maryland and doing business in Maryland.

## JURISDICTION AND VENUE

3.        Subject matter jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331 as Graves brings this action pursuant to 42 U.S.C. §§ 2000e-2(a) and 200e-3(a).

4.        Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) as Adventist is a resident of Maryland.

5.        On or about April 26, 2010, Graves' immediate supervisor, Cheryl Ottley ("Ottley") and Adventist's Manager of Human Resources, Beverly Jackson ("Jackson"), met with Graves and counseled her concerning leaving work early without permission. Graves had enrolled in a nursing program and had requested that her schedule be changed from an 8:30 AM to 5:00 PM shift to an 8:00 AM to 4:00 PM shift.  After this request was denied, Ottley approved Graves' request for a 8:00 AM to 4:30 PM shift.  Ottley then counseled Graves for further changing her shift without Ottley's approval to one starting between 7:30-7:45 AM and ending between 4:00-4:20 PM.

6.        On or about May 21, 2010, Jackson notified Graves that Adventist agreed that Graves generally could leave two days per week between Monday and Thursday at 4:15 PM to pursue her nursing education, and that this schedule accommodation extended through December 31, 2010.

7.        On or about December 15, 2010, Jackson notified Graves that it was unlikely that the schedule accommodation to leave work two days per week at 4:15 PM would be extended into 2011.

8.        On or about April 1, 2011, Graves filed EEOC Charge No. 570-2011-00919C with the EEOC for race discrimination and retaliation.

9.      On or about July 12, 2013, Graves received a "right to sue letter" from the EEOC dated July 11, 2013.

10.     On or about October 9, 2013, Graves filed the instant lawsuit.

### FACTS COMMON TO ALL COUNTS

11.     Graves, who is African-American, started working for Adventist in insurance verification in February 1998.  She resigned her employment with Adventist in 2005 and returned in 2006.

12.     Her performance was always rated satisfactory until 2010 when Ottley and Intake Supervisor Cindy DiPinto ("DiPinto") started harassing and discriminating against her, including favoring a White co-worker, Nancy Hartman ("Hartman"), in allowing Hartman liberal leave to attend nursing school while restricting Graves in leaving work early to attend nursing school.  On or about April 26, 2010, Graves filed a 21 page formal complaint with Adventist concerning the harassment and discrimination of Ottley and DiPinto toward her.

13.     On or about April 26, 2010, Ottley and Jackson counseled Graves for leaving work early without approval to attend nursing school.  Adventist allowed Hartman whatever flexibility with her work schedule she needed to attend nursing school, including working a schedule that was less than full time.  Yet, Adventist did not similarly allow Graves to work less than full time while attending nursing school and limited its approval to Graves for leaving work early to attend nursing school to 15 minutes early two days per week.  As a result of Adventist's restrictions on Graves' work schedule, Graves was frequently late to her nursing classes and was removed by Ottley in

2010 as chairperson of Adventist's Charity/Medicaid Pending Committee, thus harming her career at Adventist.

14.     On or about May 21, 2010, Jackson notified Graves that she could generally leave work at 4:15 PM two days per week to attend nursing school through December 31, 2010.

15.     On or about July 15, 2010, DiPinto, a White, forged Graves' notes on a patient's file and Adventist took no disciplinary action against DiPinto after Graves informed Adventist of the forgery.

16.     On or about December 15, 2010, Jackson notified Graves that it was unlikely that the schedule accommodation to leave work two days per week at 4:15 PM would be extended into 2011.

17.     On or about March 18, 2011, Ottley counseled Graves for allegedly holding up the processing of a referral due to insurance issues and not communicating with Ottley in a timely manner regarding the referral when, in fact, a White co-worker, Danielle Tucci ("Tucci"), was responsible for writing up the referral.  Tucci received no counseling for her failure to complete timely the referral.

18.     On or about April 1, 2011, Graves filed EEOC Charge No. 570-2011-00919C with the EEOC for race discrimination and retaliation.

19.     On or about April 20, 2011, Graves' second level supervisor, Gregory Roof, attended Graves' performance evaluation by Ottley in spite of the fact that he did not attend the performance evaluations that year of any of Graves' numerous co-workers. Graves considered his presence intimidating and threatening under these circumstances.

20.     In June 2011, Ottley denied Graves' request for one day of leave in spite of the fact that only one other person in the department was scheduled for leave on the date requested.

21.     In Summer 2011, Venzil Browne, Director of Adventist Home Assistance/Adventist Choice Nursing, told Graves that Adventist CEO Keith Ballenger had stated "I'll bury her" if Graves complained to Adventist again.  Both DiPinto and Roof had spoken to Graves loudly in harsh tones in front of co-workers.

22.     On or about December 28, 2011, Adventist terminated Graves.

<u>**COUNT I**</u>
<u>**(Race Discrimination in Violation of 42 U.S.C. § 2000e-2(a))**</u>

23.     Paragraphs 1 through 22 are incorporated by reference as if fully set forth herein.

24.     Graves is a member of a protected class as an African-American individual.

25.     Graves suffered an adverse employment action when Adventist restricted her work schedule to accommodate her nursing education while not restricting the work schedule of a White co-worker, Hartman.

26.     Graves was performing satisfactorily at the time of the adverse employment action.

27.     The adverse employment action occurred under circumstances giving rise to an inference of unlawful race discrimination due to disparate impact.

28.     As a direct and proximate result of Adventist's race discrimination against Graves, Graves suffered financial damage and emotional pain and suffering.

WHEREFORE, Graves seeks judgment against Adventist under Count I for the following relief:

A.      Compensatory damages in excess of $20,000, the exact amount to be determined at trial;

B.      Costs, reasonable attorney's fees, and pre-judgment and post-judgment interest; and

C.      Such other and further relief as the Court deems proper.

## COUNT II
### (Retaliation in Violation of 42 U.S.C. U.S.C. § 2000e-3(a))

29.     Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30.     Graves engaged in a protected activity when she filed EEOC Charge No. 570-2011-00919C with the EEOC for race discrimination and retaliation.

31.     Adventist took a materially adverse employment action against Graves when it terminated her.

32.     There was a causal link between the filing of the EEOC charge and the termination as Adventist engaged in a pattern and practice of hostile behavior and actions against Graves leading up to her termination after Graves filed her EEOC charge.

33.     As a direct and proximate result of Adventist's retaliation against Graves, Graves suffered financial damage and emotional pain and suffering.

WHEREFORE, Graves seeks judgment against Adventist under Count II for the following relief:

A.      Compensatory damages in excess of $20,000, the exact amount to be determined at trial;

B.      Costs, reasonable attorney's fees, and pre-judgment and post-judgment

interest; and

C.      Such other and further relief as the Court deems proper.

Respectfully submitted,

___/s/ Mark G. Chalpin_____
MARK G. CHALPIN, ESQ. #14552
116 Billingsgate Lane
Gaithersburg, MD 20877
(301) 990-4900
Attorney for Plaintiff

## JURY DEMAND

Plaintiff respectfully requests a jury trial as to all counts triable by jury.

_/s/ Mark G. Chalpin_____
MARK G. CHALPIN, ESQ. #14552
116 Billingsgate Lane
Gaithersburg, MD 20877
(301) 990-4900
Attorney for Plaintiff